Next case to call for oral argument is Hubert v. Randolph County Fair. Officer, whenever you're ready, make your seat. Good afternoon. Good afternoon. Counsel?  It's an honor to be here. This case was appealed by the plaintiff from the Randolph County Circuit Court. I represent the plaintiff. His name is Jason Coffey. The trial court entered an order granting summary judgment for the defendant, indicating in his order that the condition he complained of was open and obvious as to the plaintiff. Was that the basis of the trial court's ruling on both counts? It was. And there's a slight bit of confusion in the record because initially the trial court had ruled that it was open and obvious. We filed a two-count complaint. And there were two different theories under the summary judgment motion. The open and obvious condition and the assumption of risk. The trial court judge initially took it under our arguments under advisement and issued an order that said that my first count was dismissed. Which is the premise's liability count. Correct. But that the second count would survive as there was a question of comparative fall. I filed a motion for a special finding under the Supreme Court rules to set up basically my appeal because that order indicated that my client had traversed this cable, which was the subject of the lawsuit. And I did not want that to be an ultimate finding, in fact, because neither side had said he'd traversed that cable. So I made a motion for the special finding. There was a motion to reconsider filed on behalf of the defense. And ultimately, following a slate of arguments, the trial court granted summary judgment as to both counts with respect to the open and obvious condition. I appealed, and obviously we have submitted our briefs, for a number of reasons. First being that we do not believe the condition as complained of was an open and obvious condition. Obviously, I'm not going to repeat things you've heard for years and years of no. But courts have instructed us to follow a complete duty analysis when we're talking about a potential open and obvious condition. You know, the reasonable foreseeability of injury, reasonable likelihood of injury, magnitude of the burden, guarding against injury, places on the defendant, and the consequences of placing the burden on the defendant. What we have done, or what we are positing in this argument, that the specific risk of this cable would be that someone who is traversing that area could potentially trickle. My client always understood that the cable rises off the ground. In fact, he had two duties, or multiple duties, that day. But the two primary ones were to unhook this cable from the tractor and monitor the area so that there were no kids or other people, spectators, traversing that area of the cable. But what the undisputed record indicates is, as my client was walking to complete his duty, he turned as someone hollered to him, and the cable, because it was caught, whipped at where he was standing, taking him out from the back of the legs, causing his injuries. So the specific risk was not what caused the injury. We don't have the specific risk of cable whipping at high speeds projecting itself over to where he was standing. Now, I would point out that my client had done this same duty for years with the Randolph County Fair. He had performed this exact duty in previous years. He was standing in what he considered to be a zone where he would be safe to turn around and see who was hollering at him. That right there indicates that he appreciated no danger where he was standing, where the cable would come at him at high speed, tripping him from behind, causing his injuries. If I remember correctly, the fact pattern that you gave was that the truck went into reverse. And is there any showing in any of the discovery or anything appended to the motion for summary judgment that this was unusual or anticipated or unanticipated? What's the status of this truck going in reverse? Okay. The driver of the tractor witnessed the incident. Unfortunately for my son, the driver of the tractor was a younger man who we didn't know. We had to do a great deal of investigation to find out who he was. He did submit an affidavit. That affidavit was turned over to the defense. The summary judgment first hearing had already taken place in answer to your question. But the trial court, I would point out... Okay. Is that affidavit talking about the part of the record? It's not in the record. Okay. Now, I would point out that even at trial court, and in fact, I know my opponent here is going to rightfully point out that he believes that this, whether the cable whipped, whether it rose off the ground, is a semantic issue. We disagree with that. And if I could, if you'll allow me, I'm going to actually read verbatim what the trial court said when we were making this very argument. This is on January 31, 2012. Anybody would have known that the cable was going to rise and you wouldn't walk over the cable while a tractor is moving because it's going to rise up and you're going to catch your ankle when you're going over. But in fact, if the facts are that it was on the ground underneath the wheel of the truck, I can't say it was open and obvious that it was going to whip. He took that into consideration on that second hearing that we had. The other thing we would point out in our brief is that the trial court did not complete the duty analysis. It was more of this is open and obvious, summary judgment is granted. And I feel had the duty analysis been completed, that while they could have still brought it up as to an issue of comparative fault per se or submit that to the jury, we still would have had our gain in court for the trigger effect for the jury. Now what we did in our brief is point out several instances where the defendant could have taken some remedial steps to make the event safer. I mean, quite frankly, I think my opponent would agree that this was a pretty unorganized event. In fact, there was no fencing or anything to keep people from moving all around the area. That is why my client was given the duty, multiple duties of not only unhooking the tractor, but to prevent anyone who may be watching from that area from traversing that cable while it was moving. Another theory we posited in our brief is that this would come into line with one of the recognized exceptions, the open and obvious. And being either the deliberate encounter or the one I'm going to deal with first is the distraction. Obviously, as this panel knows, for the distraction exception to apply, it must have been foreseeable that the plaintiff would become distracted, and he must actually have been distracted.  The defendant clearly could have foreseen by giving him multiple duties that he would be not only walking to this cable to make sure it was properly unhooked, but also looking around, scanning the area. I mean, he's got to prevent anyone from coming in that area. On top of it, we know from the record that he was actually distracted. He walked to that area, was walking towards that area. Someone yelled at him, which seems to me foreseeable, that if someone's yelling at him and part of his duty is to supervise, make sure no one's coming in the area, he would turn to check on this person hollering at him. And at that time, the cable came and took him out from behind. So we believe, based on the duties charged to the plaintiff by the defendant, it was foreseeable that he would be distracted from what he was doing at the time. And he was actually distracted. So we believe the distraction exception does apply. Another theory we've posited is that the deliberate encounter exception would apply, in that a possessor of land and reason to expect the invitee would encounter the danger in the face of hazard. Once again, the defendant placed Lancet in this position in order to take part in this duty, knowing he would have to get near a potential, potentially open and obvious danger. As I mentioned several times, the plaintiff had done this for several years. He'd never been told by the defendant, you know what, it's dangerous, we don't want you doing it that way. We'd rather see you do something else, we'd rather you do something else. So he was performing this task, these duties, as he had every year. Accordingly, it was most definitely foreseeable that he would have to encounter this danger. So we believe that another reason why this should be submitted to a trier of fact would be because of the deliberate encounter exception. I personally believe, and I'm positing the argument, that there are several disputed issues of material fact. Not only do I believe that it is important in a disputed issue of material fact as to whether or not the cable whipped or whether it just simply straightened and rose up off the ground, I think that would be most definitely important for a trier of fact to take into consideration when assessing whether or not the condition was open and obvious. More importantly, you will note that our brief would paint the picture that our plaintiff was a simple volunteer, as he has been in the past. The defense brief points out that basically plaintiff is all things mud bog event to this fair. That, to me, is a crucial disputed factual issue. One that could take into consideration his level of experience, how often he had done the exact same thing, and thereby allowing a trier of fact to assess comparative fault based on his knowledge. Obviously, the case law, which you guys, this distinguished panel knows well, the degree to which the cable whips, the visibility of the cable, the makeup, all could be submitted to a trier of fact to render a verdict. The assumption of risk argument was not used by the trial court in granting summary judgment, but I would like to address that because I know in the response pleading or in the brief submitted by the defense, they, of course, posited that argument. Now, as I've already said, I'm not going to regurgitate things that everyone knows from the case law, but our argument, number one, is we know that there must be a master-servant relationship. Now, the defense has submitted an alms case in support of his argument that the plaintiff, as a volunteer, does not necessarily preclude a finding of a master-servant relationship. The point I'll concede. But alms does say, if you'll allow me, if I go on too long, just let you know, although the right to control the physical conduct most often determines whether the relationship of master and servant exists, a number of other factors may play a role in establishing the master-servant relationship. Ultimately, the relation of master and servant is not capable of exact definition, and it is generally left to the trier of fact to determine whether the relationship exists. This is the case that they have used to support their argument. The facts that court used, the question of hiring, the right to discharge, manner and direction of the servant, right to terminate the relationship, and the character of the supervision of the work done. Unless those facts clearly appear, the relationship cannot become purely a question of law. We believe those facts are not clear. And I believe both parties would dispute several of those factors that the alms court listed. Accordingly, it is our position that the issue is for the trier of fact. I would also point out that, from the record, the plaintiff said during his discovery deposition that the fair would ask him for his help year in and year out. And I just do not believe the master-servant relationship can exist where the proposed or the potential master has to request the help of the servant year after year. So we do not believe the master-servant relationship exists, thereby eliminating the assumption of risk argument. Those were the highlights of the issues I wanted to point out today to this panel. I would entertain any questions the panel has for me. Thank you very much. Appreciate it. Counsel? May it please the Court. Counsel. My name is Keith Hill, and I represent the defendant in Randolph County Fair. The circuit court's order granting summary judgment in favor of the defendant to be affirmed because the defendant did not owe the plaintiff a duty. In this case, the record establishes that the plaintiff was fully aware of, understood, and appreciated the danger associated with the table. Counsel indicated that in the defendant's argument, the defendant claims that the plaintiff was all things much above. That's a good way to put it. The plaintiff was all things much above. On the open and obvious danger rule, does it matter whether he subjectively understood all that? It does matter. Well, I mean, it isn't open and obvious danger. Isn't the idea behind that that it would be open and obvious to anybody? To a reasonable person, but it's also known. And so maybe it's better to put that this was a known danger. In this case, the plaintiff, regardless of a reasonable person, would have appreciated the danger. The plaintiff, in this case, knew of the danger, understood the danger, was fully aware. That's going more to an assumption of risk issue. In this case, it does. I mean, in order to apply the open and obvious danger rule, didn't the court have to decide that any reasonable person, this would be an open and obvious danger, therefore no duty to any invitees? No, Your Honor, I don't think that's necessary. I think it's known and or open and obvious. So I think in that particular circumstance, if the plaintiff in that particular circumstance subjectively knew about it, I think the open and obvious doctrine still applies because under the restatement, it's both obvious and known outside of the case in my brief that stands for that proposition. So if you do an open and obvious analysis, which is what the circuit court did, but also kind of dovetails into the assumption of risk, I think open and obvious is appropriate here. I think it's better said as known. That's what the restatement says, known or obvious. Known, correct. I think that's a good point. It should be known. Anyway, he was the person most knowledgeable about all this. He worked for the or volunteered at the Randolph County Fair doing the mud bog event before. He'd been the person who was the organizer or the person who ran the event. He'd done this thing with the tractors before. He'd done hitching the cable. He'd driven the tractor before. He'd graded the vehicles. He'd worked in the pit. He'd done this for many years. So with regards to the Randolph County Fair, this was the guy. And his job at this particular moment or this particular time, his job was to unhook the cable from the tractor. I've never been to a mud bog event. I don't know if the court has been, any members of the panel has, but my understanding of the mud bog event is these trucks run up through this pit, and there's a cable. They leave the cable attached to the truck. The truck pulls the cable through, and it's not hitched to anything else at that time. Once the truck gets stuck, they go and attach the cable to the tractor, and the tractor pulls it out. Now, he explained how he knew that there wasn't enough room for the tractor to pull straight, so the tractor had to pull at an angle. He also knew that the cable was going to be dragged along the ground for a bit. But then once it becomes taut, now I have between two vehicles, one the tractor, one the truck. So now it's taut. Once there's that tightness there, it starts pulling. And he understood that. He knew. He testified. He knew once it becomes taut, that thing's going to come off the ground. He talked about how while he's waiting for all this to happen, he's watching, he's making sure people don't get in the path of the cable. He testified, look, people don't understand. This cable's going to move pretty quick. They think they can just step over it. This cable's going to move. It can come up to a foot off the ground, and that's the tripping edge. We asked him, you understood that to be a tripping edge? He said, yes. I was trying to keep people away from this cable. So that's what he was doing. And then lo and behold, he starts walking towards the tractor, thinking, well, it's about time we don't hook the hitch. And he hears, it's not clear exactly what distracted him. It wasn't, he didn't say, somebody called out my name, and I turned around. I think it was a little more ambiguous than that. It was something to the effect of, somebody hollered at me or something or somebody said something, and I turned around. That's not, that gets into sort of the distraction. I think it's clear this was an open obvious. He understood, or known, he understood that this was a dangerous condition. He appreciated this. If anybody there at the fair, he was the guy to know about this. It was his job. He was warning people about it. Getting into the distraction and deception, I think it's more about inattention, not distraction. And there's a distinction between being distracted and just not paying attention. And unfortunately for this gentleman, I think he was just not paying attention. It was his job to make sure no one's in the path of this cable. How could he be doing that? He's turning around, looking behind him. And unfortunately for this gentleman, when he turned around and looked behind him, apparently, we're not really sure what happened. He didn't see the cable coming to get him. And there is somebody who said, well, maybe the truck that was being pulled out might have backed over it. And I think what happens is he immediately became taut. And when that happened, I think that thing, as he said, whipped up at him. Now, of course, I think Councilman Kine described it as, well, it went like this. Well, that doesn't make any sense. It's between two vehicles. They're pulling in different directions. One's pulling in this direction. This one's stopped. It didn't whip up left or right or come and snap out of it. It's between two vehicles. It just rose up off the ground and put it in the air like he knew it could. And he happened to be within enough proximity of it, he's probably walking along with it, enough proximity of it that it caught his feet and tripped him in the air. Had he been paying attention, this would not have happened. Had he been doing what he was supposed to be doing, watching out for the cable, this would not have happened. He's the one who's responsible for this. He knew it was there. He knew it was a danger. He was fully understood the danger of this. Yet he didn't pay attention, and it unfortunately tripped him and caused him to fall. So I don't think the distraction except applies aside to the Sandoval case, which I think is a good case out of the 1st District, of all the cities of Chicago. This young woman was facing her neighbor's child. And while they were outside, the child kind of got away from her. She knew there was this big, I think they called it a crater, in the sidewalk. She knew this was out there. She'd seen it. She'd known it was there. She admitted to that. But when this child got away from her, she became scared and concerned for the child. So she starts looking around for the child. And she stepped in the crater and hurt herself. She said, I was distracted by the child. Of course, wait a second. You weren't distracted by the child. Your attention was just directed away from the crater to the child, maybe right to the soul. But in this case, I think that's just like this. In this case, Mr. Hubert's attention was diverted away because he heard some noise. His attention should have been on a cave, which he knew was a danger. That's what he was supposed to be doing there. He didn't do that. Unfortunately, it resulted in his injury. So, again, I don't think it's distraction. I think it's more akin to inattention, which is not an exception to the open and obvious doctrine. The other exception they cite is deliberate encounter exception. And I just don't think factually that fits under these circumstances. Deliberate encounter is typically where if you have a snow-covered stoop and the only way into your house is that snow-covered stoop, it's reasonable as a property owner. In fact, when you have visitors come over, they're going to approach that snow-covered stoop, although it may be open and obvious that that's a hazard. That's not what the facts of this case are. He was down in the pit, but being down in the pit or in the area of this event, that wasn't the danger. The danger was the cable. He didn't deliberately put himself in the path of the cable. He deliberately put himself in that area, but not the path of the cable. So he didn't deliberately encounter that. He wasn't even paying attention to that. His eyes were converted away from it. So I don't think that deliberate encounter exception applies here either. Finally, as to this traditional duty analysis, that is correct that the court should have done a traditional duty analysis, but I think if this court were to do the traditional duty analysis, the outcome would be the same. With regard to the foreseeability of the injury, it wasn't foreseeable that this gentleman who we asked to be looking out for this cable and to make sure people were safe from the cable, that he himself, the person we charged with this very responsibility, wouldn't be tripped up by the very cable he was supposed to be looking out for. So I don't think that that was foreseeable. It was open and obvious to him he should have known about it. The other factor is the likelihood of injury. Again, the likelihood of injury was small because the condition was open and obvious. He was the person who knew most about this cable, yet he was injured by it. I think the likelihood of injury is very small there. The magnitude of guarding against it and the consequences of placing the burden on the defendant. Grand Isle County Fair is a non-for-profit organization that put on these fairs to promote agriculture. They have these sort of events, the mud bog event, I'm sure various other events. I've never been, but I'm sure it's a good time for everybody in the community to place a burden over the Grand Isle County Fair to protect against this particular scenario. To have a great magnet would be very difficult. It would be too much of a burden on the Grand Isle County Fair. I don't know what more they could have done. He was the person who was charged with protecting people who were attending the fair. He didn't do his job. He wasn't paying attention to what he was doing, and unfortunately he was injured. There's an old saying, I forget who said it, who will watch the watchman. I think that's a political saying, but I think it in a sense sort of applies here. In this case, this gentleman was the watchman. He was the one who was supposed to be protecting other people. He wasn't paying attention, and he got hurt. For those reasons, Your Honors, we respectfully request that the court affirm the trial judge's order to grant summary judgment in favor of Grand Isle County Fair. Thank you. Thank you, Counsel. Thank you. I think defense's argument demonstrates that we do have questions of material fact. We absolutely do believe that the cable did whip from side to side. The discovery deposition indicates that the vehicle was pulled out of the mud bog at an angle because there was not enough room, so we have an arc in the cable. Now, if, as is alleged, a truck is pushing out, tractor has no more room, it's going to cause a further arc in the cable from the pressure. When that is released like that, there will be a snapping action coming back, and a snapping action projecting the cable to where the defendant thought he was safe. So I believe that is a crucial dispute as to a material fact herein. Quickly, with respect to the distraction exception, defense counsel noted the Sandoval case. We believe the Sandoval case is distinguishable herein. This is why. In that case, we believe the court put forth the notion that, in that case, the plaintiff created her own distraction. We believe this distraction was created by the defendant in our case. They charged him with the duty of unhooking the cable and watching out for the safety of everyone in his area. When someone yells at him for his attention, it is reasonably foreseeable that he will have to look around. That is a duty that was put upon him by the defendant. Accordingly, they caused the distraction, which makes this case distinguishable from Sandoval. Now, the duty analysis we have agreed with should have been conducted by the trial court. I know that opposing counsel has posited the argument that this is a not-for-profit corporation. There are no unique carve-outs for a company just because they don't work for a profit. There is a series of steps, any amount of remedial measures that could have assisted the plaintiff in preventing his injury here. Wearing safety gear, hiring more volunteers, not having him do two simultaneous duties at once, putting up a fence to prevent people from... Those are minor expenses. That's all I have. Thank you, counsel. We appreciate briefs and arguments. Counsel will take the case under advisement.